UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARK WALKER, ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | 1:07-cv-0118-LJM-WTL |
| ) | |
| JPMORGAN CHASE BANK, NATIONAL ) | |
| ASSOCIATION, ) | |
|     Defendant. ) | |

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Mark Walker ("Walker"), filed this action against Defendant, JPMorgan Chase Bank, National Association ("JPMorgan"), pursuant to the Indiana common law of defamation in the Marion County Superior Court on December 27, 2006. JPMorgan properly removed the case to this Court on January 30, 2007. This matter comes before the Court on Defendant's Motion for Summary Judgment. For the reasons stated herein, the Court **GRANTS** Defendant's Motion for Summary Judgment.

### I. BACKGROUND

Walker's defamation claim arises from three words included on his Form U-5, a required termination form, that was completed after he was terminated from JPMorgan in July 2005. Specifically, Walker challenges the inclusion of the phrase "for personal use" on his Form U-5, which suggests that Walker converted customer Hoa Vanbang's funds for personal use.

1

In March 2003, Walker began working as a Personal Banker for JPMorgan at its Indianapolis Eastgate branch and, in the same month, also earned his Series 6 and 63 licenses from the National Association of Securities Dealers ("NASD") to sell investments. Pl.'s Compl. ¶ 3; Walker Dep. at 37.

Walker signed many forms regarding JPMorgan's policies and procedures. Walker Dep. at 79-82. Walker also acknowledged that he received a copy of JPMorgan's "Retail Employee Standards" that concerned confidentiality; actions prohibited at work; transactions prohibited by employees; and security. *Id.* Ex. 10, 11.

In September 2003, Walker was transferred to JPMorgan's 75th and Shadeland branch. Pl.'s Compl. ¶ 3. Amongst other duties, Walker opened and closed accounts; opened certificates of deposit ("CDs") and individual retirement accounts ("IRAs"); and profiled customers. Walker Dep. at 87.

The instance giving rise to this defamation claim occurred in May 2005. During his deposition, Walker explained that at that time JPMorgan conducted a checking account campaign through which it encouraged bankers to open a certain number of checking accounts over a period of time. *Id.* at 108-09. One method of advancing this campaign was to look for customers who had only savings accounts and call those customers to sell them a checking account. *Id.* at 109. Walker stated that a co-worker had brought Walker a "lead," or a customer who may be interested in a checking account, and that co-worker tried to contact the customer himself but the customer did not speak English. *Id.* This co-worker instructed Walker to continue to call that customer, and finally Walker reached someone who spoke English and scheduled an appointment. *Id.* Walker explained that later that week or maybe the next week the customer came to the bank and indicated that he was

the person Walker had called. *Id.* This customer was supposedly Hoa Vanbang ("fake Vanbang"). *Id.* at 110. This customer closed the savings account owned by Hoa Vanbang and moved that money to a newly-opened checking account and accepted an automatic transaction machine ("ATM") card for that account. *Id.* at 114.

After the customer left the bank, Walker filled out a manual withdraw slip and deposit ticket and wrote "on file per M. Walker" on the signature lines. *Id.* at 122-23. Walker admitted that he did not properly identify the customer because he only matched the social security number that the person gave with the customer's social security number on file and did not ask for identification, such as a driver's license. *Id.* at 121-27. As it turned out, the customer who opened the account in May 2005 was not the owner of the account, or was not actually Hoa Vanbang ("Vanbang"). *Id.* at 111.

In July 2005, Vanbang and his wife opened a new account at JPMorgan's Greenbriar branch. *Id.* at 132. Walker admitted that the Consumer Signature Card bearing the signature of the fake Vanbang who opened the account in May 2005 did not match the signature card of Vanbang in July 2005. *Id.* at 135-36. During the time between opening the invalid first and valid second accounts, there were a series of ATM withdraws of roughly $3,500.00 from Vanbang's account. *Id.* at 136-41.

Shortly thereafter, Vanbang filed a fraud complaint with JPMorgan's Fraud Prevention & Investigation ("FP&I") branch. Vanbang complained that without his authorization his savings account had been changed into a checking account, an ATM card had been issued, and roughly $3,500.00 had disappeared from that account. Philpot Aff. ¶ 6; James Aff. ¶ 5. Two FP&I branch employees, Carolyn James ("James") and Ron Philpot ("Philpot"), subsequently interviewed Walker with his consent. In addition to the fraud allegation, the interview addressed two other alleged policy

3

violations committed by Walker: transferring money to a co-worker and producing a copied signature card after failing to obtain a new signature card from a customer. Philpot Aff. ¶ 12; James Aff. ¶ 12.

Both Philpot and James attested that they had never met Walker nor prejudged his case before the interview and that they at no time harbored any malice or ill-will toward Walker. Philpot Aff. ¶¶ 19, 9; James Aff. ¶ 8. They also stated that they followed ordinary policies and standards for such interviews when interviewing Walker and at no time did they threaten or coerce him. Philpot Aff. ¶¶ 10, 11; James Aff. ¶¶ 10, 11. Walker wrote a voluntary statement during the interview:

> I take full responsibility for the $3,500.00 loss to Hoa Vanbang's acct. I acted alone w/ no other bank employees. I [illegible] began a process that ended with a loss to a customer. I knowingly opened the new acct w/o the customer's knowledge and used those funds . . . . I understand that this may be reported to the appropriate law enforcement agencies. I have read this statement of four pages, and I had the opportunity to make any changes and to confirm is thoroughness. I certify to the truthfulness and accuracy of this statement.

Walker Dep. Ex. 29.

Both Philpot and James interpreted Walker's interview remarks and his written statement of "used those funds" to mean that he converted and used Vanbang's funds for Walker's personal use. Philpot Aff. ¶ 15; James Aff. ¶ 15. Walker did not clarify what he meant by writing "used those funds." Philpot Aff. ¶ 16; James Aff. ¶ 16. Furthermore, both Philpot and James attested to personally believing that "Walker admitted to actions constituting violations of numerous bank policies and to knowingly opening an account without the customer's knowledge and using those funds for personal use." Philpot Aff. ¶ 18; James ¶ 18.

Walker was terminated from his position at JPMorgan two days after the July 2005 interview. Walker Depo. at 42.

4

After Walker's termination, Heather Emmert, Manager of Licensing and Registration for JPMorgan ("Emmert"), assisted in the completion of Walker's Form U-5 around September 16, 2005. Emmert Aff. ¶¶ 4, 11. Emmert explained,

> JPMorgan is required by the Financial Industries Regulatory Authority ("FINRA"), then known as the NASD, to complete Form U-5s for all terminated employees. FINRA mandates that JPMorgan complete the Form U-5 honestly, including specifically stating the 'Reason for Termination' . . . . JPMorgan is subject to penalties for failure to disclose information should the information JPMorgan submits on a Form U-5 be less than forthright. Form U-5s are critical to the securities industry in upholding the integrity of the industry. FINRA requires the reporting of accurate and honest information on professionals terminated from a job in the industry to ensure that other institutions do not fall prey to unethical practices by certain brokers.

*Id.* ¶¶ 6, 7, 8, 9.

Because of the public nature of Form U-5s, JPMorgan conscientiously reviews the employee's file, privately discusses the matter with internal reviewers, and then carefully contemplates the statements made on these forms. *Id.* ¶ 10.

Emmert attested that "the statements made in Walker's Form U-5 were based upon Walker's own hand-written, voluntary statement made on July 20, 2005, and not upon any ill will or malice." *Id.* ¶ 13. Emmert stated, "In the context of the Walker's voluntary statement as it was written, I understood his statement to mean that he acknowledged using those funds for personal use." *Id.* ¶ 14. Consequently, the "Reason for Termination" on Walker's Form U-5 provided: "Closed customer savings account without client authorization and converted funds for personal use. In addition he violated numerous other bank policies." Walker Dep. Ex. 31.

Amongst other questions, Walker's Form U-5 asked two questions that regarded fraud or the wrongful taking of property. Question 7B asked: "Currently is, or at termination was, the individual

5

under internal review for fraud or wrongful taking of property, or violating investment-related statutes, regulations, rules or industry standards of conduct?" *Id.* JPMorgan answered "no." Question 7F asked: "Did the individual voluntarily resign from your firm, or was the individual discharged or permitted to resign from your firm, after allegations were made that accused the individual of: (2.) fraud or the wrongful taking of property?" *Id.* Again, JPMorgan answered "no."

Walker now contends that JPMorgan acted maliciously or with reckless disregard of his rights by inserting "for personal use" on his Form U-5. Walker believes that JPMorgan should have contacted him to clarify his statements or asked him to amend his statement before filling out the Form U-5. Walker Dep. at 214.

However, Walker testified that he believed that Emmert did not spitefully fill out his Form U-5. *Id.* at 216. When asked if he believed that anybody else at the bank was motivated by ill will towards him, Walker responded, "I don't think so." *Id.* at 218. Walker also testified that based on his written statement made during the course of his conversation with Philpot and James, he believed that JPMorgan honestly thought that he had used Vanbang's money for personal use. *Id.* at 219. Walker conceded that although JPMorgan's belief was honestly held, it was wrong. *Id.*

## II. <u>SUMMARY JUDGMENT STANDARD</u>

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-

68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(c) ("Rule 56(c)"), which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar

summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. DISCUSSION

#### A. ELEMENTS OF DEFAMATION

The issue before the Court is not to decide what Walker actually meant by writing "used those funds" or whether Walker did in fact convert Vanbang's funds for personal use. The Court must only determine whether Walker has submitted evidence that shows a genuine issue of material fact that would allow a jury to rule in his favor on his defamation claim at trial.

Under Indiana law, the elements of defamation are (1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages. *See Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006). For a statement to be actionable for defamation, it "must not only be defamatory in nature, but false." *Id.* A "communication is defamatory [*per se*] if it imputes: (1) criminal conduct; (2) loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct." *Hamilton v. Prewett*, 860 N.E.2d 1234, 1243 (Ind. Ct. App. 2007) (citing *Lovings v. Thomas*, 805 N.E.2d 442, 447 (Ind. Ct. App. 2004)). If the communication is defamatory *per se*, "damages are presumed even without proof of actual harm to

plaintiff's reputation." *Id.* Because Walker did not establish a *prima facie* case of defamation, JPMorgan is entitled to summary judgment.

### B.  WALKER HAS NOT PROVED MALICE

Walker has not satisfied the second prong of his defamation claim because he produced no evidence that indicates that JPMorgan acted maliciously. Malice is established "when the defendant publishes a defamatory statement with knowledge that it was false or with reckless disregard of whether it was false or not." *Shine v. Loomis*, 836 N.E.2d 952, 958 (Ind. Ct. App. 2005) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)).  Even when viewed in the light most favorable to Walker, the record does not support a conclusion that JPMorgan knowingly included the phrase "for personal use" under false pretenses or under reckless disregard of the truth.

Because there is no evidence that JPMorgan acted under false pretenses, Walker attempts to prove that JPMorgan acted maliciously by recklessly disregarding the truth.  However, given Walker's oral remarks and written statement, there is no question that it was reasonable for JPMorgan to believe that Walker converted Vanbang's funds for personal use.

JPMorgan did not include "for personal use" on Walker's Form U-5 with high disregard for the truth or, as Walker contends, "with no idea whether it is true or not." *Journal-Gazette Co., Inc. v. Bandido's, Inc.*, 712 N.E.2d 446, 470 (Ind. 1999) (J. Boehm, concurring).  In their affidavits, Philpot, James, and Emmert, all testified that they honestly interpreted Walker's statement of "used those funds" to mean that Walker used Vanbang's funds for personal use. Philpot Aff. ¶ 15; James Aff. ¶ 15; Emmert Aff. ¶ 14.  Walker even acknowledged that these JPMorgan employees honestly believed that his written statement meant that he personally used Vanbang's funds.  Walker Dep. at

9

219. In other words, Walker acknowledged that there was a basis for writing "for personal use" because his statement supported JPMorgan's belief that he personally used Vanbang's funds. Given these affirmations, the Court finds that no reasonable jury could conclude that JPMorgan highly disregarded the truth when it wrote "for personal use" on Walker's Form U-5.

Furthermore, Walker contends that inconsistencies in the Form U-5 provide circumstantial evidence of JPMorgan's reckless disregard of the truth. The Court cannot agree. JPMorgan rightfully and consistently answered "no" to Question 7B and Section 7F of Form U-5. Walker was neither currently nor at the time of his termination under internal review for fraud or the wrongful taking of property because JPMorgan's review ended before both of these occurrences. Next, Walker did not voluntarily resign from JPMorgan and was not discharged or permitted to resign from JPMorgan after allegations of fraud or the wrongful taking of property. In this case, there were more than allegations. After conducting an investigation, JPMorgan honestly believed that Walker converted and personally used Vanbang's funds, and therefore terminated Walker.

Walker also contends that JPMorgan acted recklessly by not contacting him to clarify or amend his written statement before filling out his Form U-5. However, JPMorgan had no duty to contact Walker to clarify his statement. Walker acknowledged that he was given "the opportunity to make any changes [to his written statement] and to confirm its thoroughness" after he made the statement. Walker Dep. Ex. 29. Therefore, Walker could have changed his statement to make clear that he did not use Vanbang's funds for personal use before he submitted it, especially if he thought that Philpot and James could develop this belief based on his statement. Nonetheless, Walker did not clarify what he meant by writing "used those funds." Philpot, James, and Emmert all shared the honest belief that Walker meant that he personally used Vanbang's funds. Given their consistent

beliefs, a jury could only conclude that it was reasonable for JPMorgan to base its Form U-5 remarks on Walker's statement. As a result, Walker has failed to show a genuine issue of fact on the question of whether JPMorgan recklessly disregarded the truth by not contacting Walker to clarify what he meant by writing "used those funds" before it filled out Walker's Form U-5.

Finally, it is unnecessary for the Court to address the parties' arguments over whether any sort of privilege should apply to Form U-5s because Walker has not made a *prima facie* case for defamation.

Again, it is not this Court's duty to determine what Walker actually meant by writing "used those funds." He could have very well meant that "he used the funds from the existing Vanbang account to make the opening deposit into a new checking account for Vanbang." Pl.'s Br. at 4. However, the issue on this summary judgment motion is to determine whether Walker has put forth sufficient evidence to prove the elements of defamation or, more specifically, whether Walker has proved that JPMorgan acted either under false pretenses or with reckless disregard of the truth when it wrote "for personal use" on his Form U-5. The Court concludes that Walker has not met this burden and therefore **GRANTS** JPMorgan's Motion for Summary Judgment.

## IV. **CONCLUSION**

For the foregoing reasons, Defendant's, JPMorgan Chase Bank, National Association, Motion for Summary Judgment is **GRANTED**.

IT IS SO ORDERED this 5th day of June, 2008.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Philip J. Gibbons Jr.
GIBBONS JONES, P.C.
pgibbons@gibbonsjones.com

Thomas E. Deer
OGLETREE DEAKINS
thomas.deer@ogletreedeakins.com

Andrew G. Jones
GIBBONS JONES, P.C.
ajones@gibbonsjones.com